1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KEVIN DARNELL BRYANT,<br><br>          Plaintiff,<br><br>     v.<br><br>GALLAGHER, et al.,<br><br>          Defendants. | Case No. 1:11-cv-00446-BAM (PC)<br><br>**PRETRIAL ORDER**<br><br>Motions in Limine Filing Deadline: September 2, 2016<br><br>Opposition to Motions in Limine Filing Deadline: September 19, 2016<br><br>Motion in Limine Hearing: October 4, 2016 at 10:00 am. in Courtroom 8 (BAM)<br><br>**Jury Trial**: October 17, 2016, at 8:30 a.m. in Courtroom 8 (BAM)<br> 3-4 days |

Plaintiff Kevin Darnell Bryant ("Plaintiff") is state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. All parties have consented to magistrate judge jurisdiction. (ECF Nos. 7, 231.) This action proceeds on Plaintiff's claims against Defendant Romero for deliberate indifference to serious medical needs in violation of the Eighth Amendment, and against Defendants Gallagher and Romero for conspiracy, retaliation in violation of the First Amendment, and failure to protect in violation of the Eighth Amendment.

The parties submitted pretrial statements, and on August 3, 2016, the Court held a telephonic trial confirmation hearing. Plaintiff, appearing pro se, and Diana Esquivel, counsel for Defendants, attended the hearing. Having reviewed the parties' statements and the remainder of the file, and having

1

considered the issues raised at the telephonic trial confirmation hearing, the Court issues the instant pretrial order.

## I. <u>Jurisdiction and Venue</u>

The Court has subject matter jurisdiction over this federal civil rights action. 28 U.S.C. § 1331. Venue is proper because the conduct allegedly occurred in this judicial district. 28 U.S.C. § 1391.

## II. <u>Trial</u>

The parties demand a trial by jury. Fed. R. Civ. P. 38(b).

Trial is set for **October 17, 2016 at 8:30 a.m.** before U.S. Magistrate Judge Barbara A. McAuliffe in Courtroom 8 (BAM). The parties anticipate the trial will last approximately three (3) to four (4) days.

## III. <u>Facts</u>

### A.    <u>Plaintiff's Undisputed Facts</u>

Plaintiff contends the following facts are undisputed:

1.    Plaintiff Kevin D. Bryant, #D-56620, is a California prisoner serving life for second degree robbery involving the use of a firearm and is currently housed in the Salinas Valley State Prison (SVSP) in Soledad, California.

2.    Defendants are employed by the California Department or Corrections and Rehabilitation (CDCR) as correctional officers, and at the time pertinent to this lawsuit, were assigned to Kern Valley State Prison (KVSP) in Delano, California.

3.    The events that Plaintiff complains about allegedly occurred while he was incarcerated at KVSP.

4.    On June 8, 2010 at or about 12:00 p.m. Plaintiff suffered a severe compound fracture to his eight leg in his housing unit at KVSP severing both the tibia and fibula and the bone punctured through the skin of his ankle.

5.    Defendants Ramon R. Romero and Patrick Gallagher were the correctional officers assigned to work in Plaintiff's housing unit on June 8, 2010 during second watch shift.

///

///

6.      Defendant Romero was working in the housing unit control booth when this incident occurred and this means he was the observation officer required to observe and watch what was going on in that housing unit.

7.      Plaintiff did in fact make Defendant Romero aware of the fact that he suffered an injury to his right ankle very soon after Romero opened his cell door to let him out for him to work at his assigned barber job.

8.      That Defendant Romero or Gallagher did not hit their emergency alarm buttons at all during the time of this incident.

9.      That Defendant Romero had let several inmates come into section "A" of my housing unit where I was housed, some of which did not even live in that housing unit at all and they were in there when he let me out for work on 6/8/10.

10.     Defendants did not ever summon emergency medical care for me at time time of this incident which is the topic of this litigation.

11.     Defendant Romero opened my cell door after almost an hour after my injury to let me get my old ADA walker.

12.     Defendant Romero watched me exit the dayroom and the housing unit on this walker and he opened the door to let me out and closed it behind me.

13.     There were about three dozen inmates housed in section "A" of my housing unit on 5/8/10 and all those cells in which they were housed had a clear view of the section "A" dayroom.

14.     Up to March 2012 nobody had ever even questioned Defendants in the investigation of my complaint of staff misconduct I had filed against them.

15.     There is a State Law and a CDCR policy and procedure that governs how all CDCR inmate allegations of staff misconduct are to be investigated.

16.     Both Defendants allege that they did not know that I was seriously injured requiring emergency medical care.

17.     Both Defendants allege that I walked out of the housing (C3) unit without even a noticeable limp and they did not know I had suffered a serious and severe injury.

///

18.     Both Defendants allege that they did not see me being attacked by those inmates that Romero had in section "A" of the housing unit when he let me out for work.

19.     It took three surgeries and an outside hospital and metal plate and screws and rods to repair the severe compound fracture I suffered from this incident.

20.     I gave several recorded interviews to ISU, OIA and one to Lt. P. Morales alleging that Defendants threatened to have me assaulted on 6/7/10, had me assaulted on 6/8/10, aided and abetted in that assault and paid the assailants to assault me, and that Defendants threatened to murder me and my family if I ever tell on them about what they did to me.

### B.     Defendants' Undisputed Facts

Defendants contend the following facts are undisputed:

1.     Plaintiff is a prisoner in the custody of the California Department of Corrections and Rehabilitation (CDCR) and is serving a life sentence for his 2006 felony convictions.

2.     In June 2010, Plaintiff was incarcerated at the Kern Valley State Prison (KVSP), and he was housed on Facility C, housing unit 3, section A, cell 108.

3.     Facility C was a Special Needs Yard (SNY) at KVSP.

4.     At all times relevant to this lawsuit, Defendant Gallagher was one of the second watch (6 a.m. to 2 p.m.) Floor Officers assigned to Building C3 at KVSP, and was acting under color of state law.

5.     At all times relevant to this lawsuit, Defendant Romero was one of the second watch Floor Officers assigned to Building C3, and was acting under color of state law.

6.     On June 7, 2010, Gallagher responded to an administrative grievance (602) Plaintiff submitted, requesting that he be released for his assigned job at a specific time. Gallagher granted Plaintiff's request and returned the 602 to Plaintiff.

7.     On June 8, 2010, Officer Molina was assigned to the Control Booth in Building C3 during second watch. Molina left his post about 10 a.m., and Romero was assigned to the Control Booth for the remainder of second watch.

8.     At approximately 12:30 p.m. on June 8, 2010, Plaintiff asked to go the medical clinic.

9.     Plaintiff walked out of Building C3 at approximately 12:30 p.m. on June 8, 2010.

10.     Plaintiff was seen by medical staff at the Facility C medical clinic on June 8, 2010.

4

11.     Plaintiff was sent to the Treatment & Triage Area of the prison hospital for further evaluation or treatment on June 8, 2010.

12.     Plaintiff was transferred to Delano Regional Medical Center (DRMC) for further evaluation or treatment on June 8, 2010.

13.     Plaintiff returned to KVSP the same day from DRMC.

14.     Plaintiff was diagnosed with a fractured right leg on June 8, 2010.

15.     Plaintiff subsequently underwent surgery to repair his fractured leg.

     **C.**     **Plaintiff's Disputed Factual Issues**

1.     Whether I was even assaulted at all.

2.     Whether Defendants were deliberately indifferent to my serious medical needs on June 8, 2010.

3.     Whether Defendants were made aware by me of the fact that I had suffered a serious injury to my right ankle and required emergency medical care on June 8, 2010.

4.     Whether Defendants conspired to have me assaulted.

5.     Whether Defendants aided and abetted in that assault that assault of me by other inmates.

6.     Whether I was unable to walk at all immediately after my injury on 6/8/10.

7.     Whether Defendant Romero watched being assault by those inmates he let into the section "A" dayroom and failed to press his alarm button or to make any attempt to stop those inmates from assaulting me.

8.     Whether inmate Edward A. Vargas, CDCR No. J-63103, reported to ISU Lt. Jason Stiles that Defendants Gallagher and Romero paid those inmates to assault me and initiated the investigation into my assault.

     **D.**     **Defendants' Disputed Factual Issues**

1.     Did Defendants conspire to have Plaintiff assaulted by other inmates on June 8, 2010?

2.     Was Plaintiff assaulted by several inmates in the A-section dayroom of Building C3 that was observed by Defendants, who failed to intervene?

3.     Did Romero refuse to summon medical care for any serious medical condition Plaintiff had on June 8, 2010?

4.    Did Defendants take any retaliatory action against Plaintiff for filing a 602 against them?

5.    When and how did Plaintiff break his right leg?

    **E.**    **Disputed Evidentiary Issues**[1]

        **1.**    **Plaintiff's Disputed Evidentiary Issues**

a) Plaintiff reserves objections to specific testimony and exhibits until such time as I have had an opportunity to hear such testimony and examine such exhibits.

b) Plaintiff anticipates that Defendants may try to offer opinion testimony on Plaintiff's medical condition, statutory or regulatory construction, or prison policies and procedures. Plaintiff objects to any such testimony by Defendants, as they are not qualified to render such opinions.

c) Should Defendants or any other prison official or inmate witness testify on their behalf, Plaintiff will seek to impeach such witnesses by presenting evidence of prior felony convictions, prior staff misconduct complaints and investigations conducted against them and whether state law and CDCR policies and procedures were followed and adhered to in the CDCR investigations of those prior complaints, pursuant to the Rule 609 of the Federal Rules of Evidence.

        **2.**    **Defendants' Disputed Evidentiary Issues**

a) Defendants object to Plaintiff testifying about the diagnosis and prognosis of his right leg injury, an alleged broken hand and elbow, and any residual effects of which he now complains. Plaintiff is not qualified to give testimony about the cause and effect, diagnosis, or prognosis of his medical conditions. This issue can be resolved by motion in limine.

b) Defendants intend to file motions in limine to preclude Plaintiff from testifying, eliciting testimony, or introducing evidence of the following matters: (1) dismissed Defendants or claims and unrelated claims and individuals; (2) Defendants' involvement in other lawsuits or incidents alleging retaliation, denial of medical care, excessive force, or conspiracies, in particular the staff complaint filed by inmate Vargas against Defendant Romero; (3) Plaintiff's theories that Defendants and other KVSP conspired to have him assaulted or killed after June 8, 2010; (4) Internal Affairs investigations into Plaintiff's allegations of KVSP staff misconduct unrelated to the June 8, 2010 incident; (5)

---

[1]    The parties may file motions in limine, addressed below, and/or object to the introduction of evidence at trial.

Plaintiff's interpretation or opinion of various CDCR and KVSP regulations and policies; (6) offers to compromise; and (7) CDCR's indemnification of an adverse judgment.

c) Defendants will file a motion in limine to exclude many of the witnesses listed in Plaintiff's pretrial statement absent an offer of proof that they have personal knowledge or relevant information about the events of June 8, 2010, and to exclude or limit the testimony of Plaintiff's expert, Nurse Blantz.

d) Defendants will file a motion in limine to permit them to introduce evidence of Plaintiff's and any incarcerated witness's felony conviction and length of sentence for impeachment purposes.

e) Defendants anticipate objecting to many of Plaintiff's proposed trial exhibits, and will move to preclude Plaintiff from using any document that was timely requested but not produced during discovery.

**F.**    **Special Factual Information**

None.

**IV. Relief Sought**

Plaintiff seeks compensatory and punitive damages, and costs of this case, including that of the expert witness, all witness fees, and other costs sustained in the litigation.

Defendants seek a judgment in their favor and an award of costs.

**V. Points of Law**

**A.**    **Imposition of Liability Under Section 1983**

Under section 1983, Plaintiff is required to prove that each defendant (1) acted under color of state law and (2) deprived him of rights secured by the Eighth Amendment of the United States Constitution. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). Plaintiff must prove that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). "A supervisor is liable under § 1983 for a subordinate's constitutional violations 'if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.'" Maxwell v. Cnty. of San Diego, 708 F.3d 1075, 1086 (9th Cir. 2013) (quoting Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)).

///

There is no respondeat superior liability under section 1983, and each defendant is only liable for his own misconduct. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948-49 (2009).

**B.    First Amendment Retaliation**

A prisoner has a right under the First Amendment to file a prison grievance. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). A prisoner has a right to meaningful access to the courts which includes the "broader right to petition the government for a redress of his grievances." Silva v. Di Vittorio, 658 F.3d 1090, 1101-02 (9th Cir. 2011); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (overruled on other grounds by Shaw v. Murphy, 532 U.S. 223, 230 n.2, 121 S. Ct. 1475 n.2 (2001)). Prison officials may not retaliate against prisoners for exercising their right to file grievances. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

A viable claim of retaliation in violation of the First Amendment consists of five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012); Brodheim, 584 F.3d at 1269.

A plaintiff suing for retaliation under section 1983 must prove that "he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994). The plaintiff does not need to show actual inhibited or suppressed speech, but that there was a chilling effect upon his speech. Rhodes, 408 F.3d at 569. The burden is on the plaintiff to plead and prove the absence of any legitimate correctional goals for the alleged conduct. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

**C.    Eighth Amendment – Deliberate Indifference**

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted). "While

1   conditions of confinement may be, and often are, restrictive and harsh, they must not involve the

2   wanton and unnecessary infliction of pain." Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at

3   347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose

4   or contrary to evolving standards of decency that mark the progress of a maturing society violate the

5   Eighth Amendment. Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v.

6   Pelzer, 536 U.S. 730, 737 (2002); Rhodes, 452 U.S. at 346.

7          Prison officials have a duty to ensure that prisoners are provided adequate shelter, food,

8   clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir.

9   2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in

10  prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted).  To

11  maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately

12  indifferent to a substantial risk of harm to his health or safety. E.g., Farmer, 511 U.S. at 847; Thomas

13  v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir.

14  2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th

15  Cir. 1998). A prisoner's claim does not rise to the level of an Eighth Amendment violation unless (1)

16  "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and

17  (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d

18  1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation

19  omitted)).

20         Deliberate indifference requires a showing that prison officials were aware of a "substantial

21  risk of serious harm" to an inmate's health or safety and that there was no "reasonable justification for

22  the deprivation, in spite of that risk." Thomas, 611 F.3d at 1150 (quoting Farmer, 511 U.S. at 844. The

23  circumstances, nature, and duration of the deprivations are critical in determining whether the

24  conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim.

25  Johnson, 217 F.3d at 731.

26         **D.      Eighth Amendment – Failure to Intervene or Protect**

27         Prison officials are required "to take reasonable steps to protect inmates from physical abuse."

28  Hoptowit v. Ray, 682 F.2d 1237, 1250 (9th Cir. 1982) (abrogated on other grounds by Sandin v.

O'Connor, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995)). "[A] prison official can violate a prisoner's Eighth Amendment rights by failing to intervene." Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995). The prison official may be held liable under the Eighth Amendment if the official is deliberately indifferent to a serious risk to inmate safety; that is, if he knows the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Farmer, 511 U.S. at 847. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and draw the inference. Id. at 837.

### E.   **Conspiracy**

A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540–41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional right, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 20 866 F.2d 1121, 1126 (9th Cir.1989)). The agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants. Crowe v. Cty. of San Diego, 608 F.3d 406, 440 (9th Cir. 2010.) "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

### F.   **Qualified Immunity**

The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L .Ed .2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 563 U.S. 731, 131 S.Ct. 2074, 2085, 179 L. Ed. 2d 1149 (2011) (citations omitted).

To determine if an official is entitled to qualified immunity the court uses a two part inquiry. Saucier v. Katz, 533 U.S. 194, 200, 121 S. Ct. 2151, 2155, 150 L. Ed. 2d 272 (2001) overruled in part

by <u>Pearson</u>, 555 U .S. at 236, 129 S. Ct. at 818. The court determines if the facts as alleged state a violation of a constitutional right and if the right was clearly established at the time of the challenged conduct. <u>Ashcroft</u>, 131 S.Ct. at 2080. This does not require that the same factual situation must have been decided, but that existing precedent would establish the statutory or constitutional question beyond debate. <u>Id</u>. at 2083; <u>Mattos v. Agarano</u>, 661 F.3d 433, 442 (9th Cir. 2011). The inquiry as to whether the right was clearly established is "solely a question of law for the judge." <u>Dunn v. Castro</u>, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting <u>Tortu v. Las Vegas Metro. Police Dep' t.</u>, 556 F.3d 1075, 1085 (9th Cir. 2009)). District courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." <u>Pearson,</u> 555 U.S. at 236, 129 S. Ct. at 818.

"For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" <u>Hope v. Pelzer</u>, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515, 153 L. Ed. 2d 666 (2002) (citation omitted). Official action is entitled to protection "unless the very action in question has previously been held unlawful." <u>Hope</u>, 536 U.S. at 739. "Specificity only requires that the unlawfulness be apparent under preexisting law," <u>Clement v. Gomez</u>, 298 F.3d 898, 906 (9th Cir. 2002) (citation omitted), and prison personnel "can still be on notice that their conduct violates established law even in novel factual circumstances," <u>Hope</u>, 536 U.S. at 741. The salient question is whether the state of the law at the time gave defendants fair warning that their alleged treatment of plaintiff was unconstitutional.  <u>Id</u>.

### G.   <u>Punitive Damages</u>

Plaintiff has the burden of proving what, if any, punitive damages should be awarded by a preponderance of the evidence. NINTH CIRCUIT MODEL CIVIL JURY INSTRUCTIONS § 5.5 (2008). The jury must find that Defendants' conduct was "motivated by evil motive or intent, or . . . involves reckless or callous indifference to the federally protected rights of others." <u>Smith v. Wade</u>, 461 U.S. 30, 56, 103 S.Ct. 1625 (1986). Acts or omissions which are malicious, wanton, or oppressive support an award of punitive damages. <u>Dang v. Cross</u>, 422 F.3d 800, 807-08 (9th Cir. 2005).

///

///

11

**H**.     **Federal Rules of Evidence**

Federal Rule of Evidence 609 provides that evidence of a witness's prior felony conviction may be used to impeach that witness's testimony. Fed. R. Evid. 609.

Federal Rule of Evidence 404(b) provides that evidence of prior crimes, wrongs, or acts cannot be used to prove the character of the person in order to show conduct in conformity with that character trait. Fed. R. Evid. 404(b). Such prior acts may be admissible for other purposes only, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Id.

**VI.** **Abandoned Issues**

None.

**VII.**     **Witnesses**

The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses.  NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 281(b)(10).

**A.**     **Plaintiff's Witness List**[2]

1.     Plaintiff Kevin D. Bryant

2.     Christine Blantz, NP-C

3.     Lt. Jason Stiles, CDCR Correctional Officer

4.     Sgt. Angela Sells, CDCR Correctional Officer

5.     Lt. James P. Harden, CDCR Correctional Officer

6.     C/o Mr. M. Molina, CDCR Correctional Officer

7.     Lt. Constance Waddle, Correctional Officer

8.     Ms. B. DaVeiga, Former KVSP Appeals Coordinator

---

[2]     Plaintiff is not required to call all of the witnesses listed.  However, witnesses the parties plan to call must be available on October 17, 2016, by 9:30 a.m., unless otherwise ordered by the Court. The Court will not delay the proceedings because of witness unavailability.  Also, although Plaintiff has not named the Defendants as witnesses, he may call them as witnesses in his case-in-chief.

9.      Special Agent Ricardo Christensen, CDCR OIA

10.     Special Agent Gerald Biane, CDCR OIA

11.     Edward A. Vargas, #J-63103, CDCR Prisoner

12.     Ricardo Contreras, #F-56749, CDCR Prisoner

13.     Rufus B. Levels, #F-62510, CDCR Prisoner

14.     Sandy Markman, RN

15.     Dr. Sandra Schaefer

16.     Young Paik, M.D.

17.     The Custodian of records for the California Department of Corrections and Rehabilitation.

**B.      Defendants' Witness List**[3]

1.      Kevin Bryant, Plaintiff

2.      P. Gallagher, Defendant

3.      R. Romero, Defendant

4.      Sarbjeet Kaur, RN (expert witness)

5.      Helen Tuhin, RN

6.      S. Markman, RN

7.      Vladimir Skorohod, M.D.

8.      A. Sell, KVSP Sergeant

9.      J. Stiles, former KVSP Lieutenant

10.     R. Lopez, KVSP Officer

11.     Custodian(s) of Records for Plaintiff's central file and medical records with CDCR.[4]

---

[3]      Defendants are not required to call all of the witnesses listed.  However, as noted above, witnesses the parties plan to call must be available on October 17, 2016, by 9:30 a.m., unless otherwise ordered by the Court. The Court will not delay the proceedings because of witness unavailability.

[4]      As discussed below, the parties stipulated to have the custodian of records authenticate unaltered records from Plaintiff's central and medical files maintained by CDCR and any CDCR record generated and maintained in the regular course of business, by written declaration. The Court has accepted this stipulation. Since an agreement has been reached for these records, Defendants are not required to produce a custodian of records for these records. Otherwise, the custodian of records shall appear at trial and shall be available for Plaintiff to call. Regardless of any agreements on authenticity, the documents may still be objected to on other grounds.

1    ///

2    **VIII.    Exhibits**

3    The following is a list of documents or other exhibits that the parties expect to offer at

4    trial. **NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE**

5    **ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS**

6    **ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P.**

7    **16(e); Local Rule 281(b)(11).**

8    **A.    Plaintiff's Exhibits**

9    1.    Portions of Plaintiff's CDCR central file and medical files, including, but not limit to:

10    a) All responses to Inmate Grievances 602 Appeals and staff misconduct complaints (from

11    June 8, 2010 to present),

12    b) Responses to all Emergency Letters and Requests for Protection that Plaintiff sent to Office

13    of Internal Affairs (OIA), KVSP warden(s) and KVSP officials, including but not limited to ISU

14    officials, whether included in Plaintiff's prison records and files or not (from 6/8/10 to present),

15    c.) All Emergency Letters and Requests for Help and Protection that Plaintiff sent to state and

16    federal outside agencies and the responses thereto (from 6/8/10 to present),

17    d) All CDCR records of all investigations that were conducted into this incident, including but

18    not limited to, all the recorded interviews of Plaintiff, inmate Edward A. Vargas, #J-63103, and all

19    prison officials and inmates who were interviewed (from 6/8/10 to present),

20    e) Medical 7362 forms filled by Plaintiff (from 6/8/10 to present),

21    f) Outside medical notes,

22    g) Physicians or Interdisciplinary Progress Notes (from 6/8/10 to present),

23    h) All doctors' notes regarding Plaintiff's injuries (from 6/8/10 to present),

24    i) Physicians' Orders from CDCR and all clinics and hospitals they referred Plaintiff to (from

25    6/8/10 to present),

26    j) All medical Hospital Records including, but not limited to the color photos taken by them of

27    Plaintiff's injury on 6/10/10 and all other hospital records (from 6/8/10 to present

28    k) Operating Room Nurse's notes,

14

1       l) CDC 7292 Health Record Reports,

2       m) Pathology Reports,

3       n) Outpatient Medication Administration Records,

4   2.      CDCR policies, regulations and memoranda, including:

5       a) Department of Corrections Operation Manual sections relevant to CDCR's policies and

6   procedures on the investigation of staff misconduct complaints which reference serious bodily injury

7   to an inmate,

8       b) The KVSP Operational Procedure (OP) relevant to CDCR's policies and procedures on the

9   investigation of staff misconduct complaints which reference serious bodily injury to an inmate,

10      c) California Code of Regulations Title 15 on staff misconduct complaints, investigations of

11  staff misconduct and the records of those investigations, including but not limited to, where and how

12  they are to be recorded in inmate records and files,

13      d) Statement of the Job Descriptions, duties and responsibilities from the California State

14  Personnel Board on CDCR correctional officers, sergeants, lieutenants, and counselors,

15      e) The Department oi Corrections Operation Manual sections on the Office of Internal Affairs

16  policies and procedures regarding complaints, investigations and reporting of staff misconduct

17  complaints and investigations and discipline of officials found guilty thereof,

18      f) CDCR's policies and procedures regarding providing emergency medical care to inmates by

19  correctional officers and medical staff,

20      g) All prior 602 appeals and staff misconduct complaints filed by any inmates against these

21  two Defendants which allege that Defendants assaulted them, had them assaulted by other inmates,

22  were in any way involved with them being assaulted, threats to harm or kill any inmates, whether

23  deemed founded or unfound by the alleged· investigators (from 6/8/10 to present),

24      f) All personnel records of these two defendants which evidence or even reference that they

25  have been disciplined by CDCR for staff misconduct which involved any of the topics in the last

26  paragraph (g) also for excessive use of force or unnecessary use of force against any inmates (from

27  6/8/10 to present).

28  ///

### B.   Defendant's Exhibits

1.   Plaintiff's Inmate Movement History

2.   Classification Chrono (CDCR 128G), October 13, 2010

3.   Administrative Segregation Unit Placement Notice (CDC 114-D), November 30, 2010

4.   Comprehensive Accommodation Chronos (CDC 7410), September 11, 2009, March 10, 2010, October 8, 2010

5.   Disability Placement Program Verification (CDC 1845), April 23, 2009, May 11, 2009, September 21, 2009

6.   Photographs/Diagram of Facility C yard, Housing Unit 3, C3 section A, and Facility C medical clinic at KVSP

7.   Plaintiff's Relevant CDCR Medical Records from June 8, 2010 to December 2010

8.   Kaur's Rule 26 Report and Records/Material relied on

9.   Abstract of Judgment for Plaintiff's committed offense

10.   Declaration of Custodian of Records of Plaintiff's central file records with CDCR

11.   Declaration of Custodian of Records of Plaintiff's medical file records with CDCR

### IX. Discovery Documents to be Used at Trial

Defendants intend to possibly use Plaintiff's deposition testimony, taken on October 12, 2011, and his responses to interrogatories and admission requests at trial, for impeachment purposes.

The parties are warned that the Court generally does not allow the admission into evidence of discovery documents, including responses or transcripts, in their entirety.

### X.   Further Discovery or Motions

Plaintiff intends to file a motion to compel the production of the records of the investigation(s) of this incident that were created by each of the CDCR official witnesses he has listed in section **VII.A.**, above. That motion will be denied, for the reasons discussed during the telephone trial confirmation hearing.

Defendants do not intend any further discovery or related motions.

///

///

XI. **Stipulations**

The parties stipulate that Defendants were acting under color of law at all times relevant to this action. The Court accepts this stipulation.

The parties have also stipulated to the authenticity of Plaintiff's unaltered records from his central and medical files maintained by CDCR and any CDCR record generated and maintained in the regular course of business, which may be used as exhibits at trial. The Court accepts this stipulation. The records may be objected to for other reasons.

XII. **Amendments/Dismissals**

None.

XIII. **Settlement Negotiations**

The parties have engaged in prior settlement negotiations and a settlement conference. They do not believe any further settlement conference will be helpful.

XIV. **Agreed Statement**

None.

XV. **Separate Trial of Issues**

Defendants request that the issue of punitive damages be bifurcated, and at the telephonic trial confirmation hearing, Plaintiff confirmed that he does not object to such bifurcation.

As is the Court's general practice, the punitive damages phase, if any, will be bifurcated.

XVI. **Impartial Experts – Limitation of Experts**

None.

XVII. **Attorney's Fees**

Plaintiff seeks costs. Any such award shall be limited by the relevant provisions of 42 U.S.C. § 1997e(d).

Defendants may seek reasonable attorney's fees and costs if they prevail at trial.

XVIII. **Trial Exhibits**

No special handling.

XIX. **Trial Protective Order**

None.

## XX.        Miscellaneous

### A.        Further Trial Preparation

#### 1.        Motions in Limine

##### a.        Briefing Schedule

Any party may file a motion in limine, which is a procedural mechanism to limit in advance testimony or evidence in a particular area. United States v. Heller, 551 F.3d 1108, 1111 (9th Cir. 2009) (quotation marks omitted). In the case of a jury trial, the Court's ruling gives Plaintiff and Defendants' counsel advance notice of the scope of certain evidence so that admissibility is settled before attempted use of the evidence before the jury. Id. at 1111-12 (quotation marks omitted).

Any motion in limine must be served on the other party, and filed with the Court by **September 2, 2016**. Any motion in limine must clearly identify the nature of the evidence that the moving party seeks to prohibit the other side from offering at trial.

Any opposition to a motion in limine must be served on the other party, and filed with the Court by **September 19, 2016**.  **No reply briefs shall be submitted by the parties.**

An order may be issued prior to trial resolving these motions. Otherwise, a motion in limine hearing will be held, telephonically, on **October 4, 2016 at 10:00 a.m.** in Courtroom 8 (BAM).

**Whether or not a party files a motion in limine, that party may still object to the introduction of evidence during the trial.**

#### 2.        Other

##### a.        Trial Briefs

The parties are relieved of their obligation under Local Rule 285 to file a trial brief. If the parties wish to submit a trial brief, they must do so on or before **October 4, 2016**.

##### b.        Verdict Form

The Court will prepare the verdict form, which the parties will have the opportunity to review on the morning of trial. If the parties wish to submit a proposed verdict form, they must do so on or before **October 4, 2016**.

///

///

1

              **c.**     <u>**Jury Instructions**</u>

2          The Court will prepare the jury instructions, which the parties will have the opportunity to

3  review on the morning of trial. **The parties shall also meet and confer, by telephone or other**

4  **means, to agree upon jury instructions for use at trial.** Defendants shall file proposed jury

5  instructions as provided in Local Rule 163 on or before **October 4, 2016**. Plaintiff is not required to

6  file proposed jury instructions but if he wishes to do so, he must file them on or before **October 4,**

7  **2016**.

8          All jury instructions shall indicate the party submitting the instruction (e.g., Plaintiff or

9  Defendants), the number of the proposed instruction in sequence, a brief title for the instruction

10  describing the subject matter, the text of the instruction, and the legal authority supporting the

11  instruction. **Defendants shall also provide the Court with a copy of their proposed jury**

12  **instructions in Word format via e-mail at: bamorders@caed.uscourts.gov.**

13          The parties shall use Ninth Circuit Model Civil Jury Instructions to the extent possible. Ninth

14  Circuit Model Jury Instructions SHALL be used where the subject of the instruction is covered by a

15  model instruction. Otherwise, BAJI or CACI instructions SHALL be used where the subject of the

16  instruction is covered by BAJI or CACI. All instructions shall be short, concise, understandable, and

17  neutral and accurate statements of the law. Argumentative or formula instructions will not be given

18  and must not be submitted. Quotations from legal authorities without reference to the issues at hand

19  are unacceptable.

20          The parties shall, by italics or underlining, designate any modification of instructions from

21  statutory or case authority, or any pattern or form instruction, such as the Ninth Circuit Model Jury

22  Instructions, BAJI, CACI, or any other source of pattern instructions. The parties must specifically

23  state the modification made to the original form instruction and the legal authority supporting the

24  modification.

25          The Court will not accept a mere list of numbers of form instructions from the Ninth Circuit

26  Model Jury Instructions, CACI, BAJI, or other instruction forms. The proposed jury instructions must

27  be in the form and sequence which the parties desire to be given to the jury.

28  *///*

All blanks to form instructions must be completed. Irrelevant or unnecessary portions of form instructions must be omitted.

### d.   Proposed Voir Dire

Proposed voir dire questions, if any, shall be filed on or before **October 4, 2016**, pursuant to Local Rule 162.1.

### e.   Statement of the Case

The parties may serve and file a non-argumentative, brief statement of the case which is suitable for reading to the jury at the outset of jury selection on or before **October 4, 2016**. The Court will consider the parties' statements but will draft its own statement. The parties will be provided with the opportunity to review the Court's prepared statement on the morning of trial.

### f.   Trial Exhibits

The original and two (2) copies of all trial exhibits, along with exhibit lists, shall be submitted to **Courtroom Deputy Harriet Herman no later than October 4, 2016**. The parties shall also serve one (1) copy of all trial exhibits, along with their exhibit list, on each other no later than **October 4, 2016**. This includes any demonstrative evidence the parties intend to use. Plaintiff's exhibits shall be pre-marked with the prefix "PX" and numbered sequentially beginning with 100 (e.g., PX-100, PX-101, etc.). Defendants' exhibits shall be pre-marked with the prefix "DX" and numbered sequentially beginning with 200 (e.g., DX-200, DX-201, etc.). Exhibits which are multiple pages shall be marked with page numbers in addition to the prefix and exhibit number, on each page of the exhibit (e.g., PX-100, page 1 of 2, PX-100, page 2 of 2, etc.). Defendants' exhibits shall also be separated by tabs.

**The parties are required to meet and confer, by telephone or other means, to agree upon and identify their joint exhibits, if any.** Joint exhibits shall be pre-marked with the prefix "JT" and numbered sequentially beginning with 1 (e.g., JT-1, JT-2, etc.), and Defendants' counsel shall submit the original and two (2) copies of the joint trial exhibits, with exhibit lists and separated by tabs, no later than **October 4, 2016**.

### XXI.   Objections to Pretrial Order

Written objections to the pretrial order, if any, must be filed on or before **August 22, 2016**. Such objections shall specify the requested modifications, corrections, additions or deletions.

**XXII.**      <u>**Compliance with Pretrial Order**</u>

Strict compliance with this order and its requirements is mandatory. The Court will strictly enforce the requirements of this pretrial order, and counsel and parties are subject to sanctions for failure to fully comply with this order and its requirements. The Court will modify the pretrial order "only to prevent manifest injustice." Fed. R. Civ. P. 16(e). The Court ADMONISHES the parties and counsel to obey the Federal Rules of Civil Procedure and the Court's Local Rules and orders. The failure to do so will subject the parties and/or counsel to sanctions as the Court deems appropriate.

IT IS SO ORDERED.

Dated:   <u>**August 4, 2016**</u>          <u>  /s/ *Barbara A. McAuliffe*  </u>
                                    UNITED STATES MAGISTRATE JUDGE